# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | | |
|---|---|---|
| DANIEL MOCK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:13cv1292 |
| | ) | (LMB/JFA) |
| FEDERAL HOME LOAN | ) | |
| MORTGAGE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ....................................................................................iii-iv

I.      INTRODUCTION ............................................................................... 1

II.     FACTS ...................................................................................... 2-11

     A.     Plaintiff's Primary Job Duties are Directly Related to the Business
           Operations of Freddie Mac ................................................... 3-6

     B.     Plaintiff's Primary Job Duties Include the Exercise of Discretion and
           Independent Judgment with Respect to Matters of Significance ............. 6-8

     C.     Plaintiff's Primary Job Duties are those of a Computer Systems
           Engineer ...................................................................... 8-9

     D.     Defendant Classified Plaintiff's Job Duties as Exempt in Good Faith 10-11

III.    ARGUMENT .............................................................................. 11-22

     A.     Plaintiff's Primary Job Duties are Exempt Under the
           Highly Compensated and Administrative Employee Exemptions
           of the FLSA ................................................................. 12-17

          1.     Highly Compensated Employee Exemption Legal Standard .. 12-13

          2.     Plaintiff is a Highly Compensated Employee ............................ 13-14

          3.     Administrative Employee Exemption ........................................... 15-19

              a.     Plaintiff's Primary Job Duties Directly Relate to the
                  Management or General Business Operations of Freddie
                  Mac ...................................................................... 15-17

              b.     Plaintiff's Primary Job Duties Include the Exercise of
                  Discretion and Independent Judgment with Respect to
                  Matters of Significance ...................................... 17-19

     B.     Plaintiff's Primary Job Duties Qualify for the Computer Employee
           Exemption ................................................................... 19-21

     C.     Plaintiff Cannot Show a Willful Violation of the FLSA ....................... 21-22

     D.     Plaintiff Cannot Recover Any Damages for Alleged

Unpaid Regular Time Under the FLSA ...................................................... 22-23

IV.    CONCLUSION .................................................................................................. 23

LIST OF EXHIBITS

Exhibit A, Statement of Facts

Exhibit B, Declaration of Jun Hu

Exhibit C, Declaration of Carl Thomas Wiles

Exhibit D, Declaration of Manish Bhonde

Exhibit E, Declaration of Gregory Watchman

Exhibit F, Declaration of Linda Connolly

Exhibit G, Plaintiff Daniel Mock Deposition Transcript Excerpts

Exhibit H, Plaintiff Daniel Mock 2011 Performance Evaluation

Exhibit I, Plaintiff Daniel Mock 2010 Performance Evaluation

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248 (1986)...................................................................... 11

*Amendola v. Bristol-Myers Squibb Co.*,
558 F.Supp.2d 459 (S.D.N.Y. 2008) ...............................................................13

*Avery v. Chariots for Hire*,
748 F. Supp.2d 492 (D.Md. 2010) ................................................................ 22

*Bagwell v. Florida Broadband, LLC*
385 F.Supp.2d 1316 (S.D. Fla. 2005)...........................................................16

*Beale v. Hardy*,
769 F.2d 213, 214 (4th Cir. 1986) ............................................................. 12

*Blankenship v. Thurston Motor Lines*,
415 F.2d 1193 (4th Cir. 1969) .............................................................22-23

*Bobadilla v. MDRC*,
2005 WL 2044938 (S.D.N.Y. 2005).............................................................20

*Celotex Corp. v. Catrett*,
477 U.S. 317, 322 (1986)...................................................................... 11

*Darveau v. Detecon, Inc.*,
515 F.3d 334, 338 (4th Cir. 2008) ...............................................................14, 15

*Desmond v. PNGI Charles Town Gaming, LLC*,
630 F.3d 351, 358 (4th Cir. 2011).............................................................. 21

*Francis v. Booz, Allen & Hamilton, Inc.*,
452 F.3d 299, 302 (4th Cir. 2006) ............................................................. 11

*Martin v. Ind. Mich. Power Co.*,
381 F.3d 574, 580 (6th Cir.2 004) ............................................................. 19

*McLaughlin v. Richland Shoe Co.*,
486 U.S. 128, 108 S.Ct. 1677 (1988) ........................................................ 21

*Piscione v. Ernst & Young, L.L.P.*,
171 F.3d 527 (7th Cir. 1999) .............................................................. 18

*Reich v. John Alden Life Ins. Co.*,
  126 F.3d 1, 7 (1st Cir. 1997) ...................................................................................... 15

*Spriggs v. Diamond Auto Glass*,
  242 F.3d 179, 183 (4th Cir. 2001) ............................................................................... 11

*Zelenika v. Commonwealth Edison Co.*,
  2012 WL 3005375, at *12 (N.D. Ill. 2012)……………………………………………..14

**Federal Statutes**

29 U.S.C. § 255(a) ........................................................................................................... 21

**Federal Regulations**

29 C.F.R. § 541.200 ......................................................................................................... 15

29 C.F.R. § 541.201 ......................................................................................................... 15

29 C.F.R. § 541.205(b) .................................................................................................... 16

29 C.F.R. § 541.205(c) ..................................................................................................... 16

29 C.F.R. § 541.207 ......................................................................................................... 17

29 C.F.R. § 541.207(d)(2) ................................................................................................ 17

29 C.F.R. § 541.207(e)(1) ................................................................................................ 18

29 C.F.R. § 541.400(b) .................................................................................................... 19

29 C.F.R. § 541.400(b)(3) ................................................................................................ 20

29 C.F.R. § 541.601(a) ..................................................................................................... 12

29 C.F.R. § 541.601(c) ..................................................................................................... 13

29 C.F.R. § 541.601(d) .................................................................................................... 13

29 C.F.R. § 541.700 ......................................................................................................... 13

29 C.F.R. § 541.701 .................................................................................................... 12-13

# I.   INTRODUCTION[1]

This matter is an individual Fair Labor Standards Act ("FLSA") case filed by the Plaintiff Daniel Mock ("Plaintiff" or "Mock") against his employer, Freddie Mac, on October 16, 2013.   Plaintiff contends that his position at the Company has been misclassified as "exempt" under the FLSA and that he is entitled to overtime pay from October of 2010 to the present.

Plaintiff's claims are without merit.   Freddie Mac properly classified Plaintiff's duties at the Company as "exempt" under the FLSA pursuant to the highly-compensated employee exemption, the administrative exemption, and the computer employee exemption set forth under the Act.   Further, Plaintiff cannot maintain a claim for any alleged unpaid regular time under the FLSA as such claims are not cognizable under the Act and should be dismissed.   Moreover, Plaintiff's claims for damages under Count I of the Complaint that accrued more than three years prior to the filing of this lawsuit must also be dismissed, as those damages are time-barred by the applicable statute of limitations under the FLSA.   In addition, any claims for overtime under Count I of the Complaint that accrued more than two years prior to the filing of this lawsuit are belied by the undisputed facts of this case, which amply demonstrate that Defendant had a good faith basis for classifying Plaintiff's job duties as exempt under the FLSA.   As such, Plaintiff cannot show a willful violation of the Act.

For these reasons, the Court should dismiss Plaintiff's lawsuit in its entirety.

---

[1] This amended Memorandum Of Law in Support of Defendant's Motion for Summary Judgment corrects some typographical errors found in the first version of the Memorandum filed on this same day, and is intended to replace the earlier version of the Memorandum.  However, there are no substantive changes intended with this filing and all references to Exhibits previously filed in support of the Motion remain the same.

## II.     <u>FACTS</u>[2]

Defendant Freddie Mac is a Government Sponsored Enterprise chartered to provide liquidity, stability, and affordability to the United States housing market.  Freddie Mac participates in the secondary mortgage market by purchasing mortgage loans and mortgage-related securities for investment, and by issuing guaranteed mortgage-related securities.   Freddie Mac employs nearly 5,000 employees company-wide, including approximately 2,400 employees in its Information Technology ("IT") Division.  The IT infrastructure at Freddie Mac is complex, and is an important part of its business operations, as indicated by the substantial number of employees working in the company's IT Division.  Plaintiff began his employment at Freddie Mac in 1994.  He  is a full-time salaried computer engineer in the Infrastructure Engineering Group of Freddie Mac's IT Division.  In 2010, Plaintiff's total compensation was $110,133.  Ex. F, ¶ 3.  In 2013, Plaintiff's total annual compensation was $162,826.  Plaintiff's current base salary is $133,624 and, he is eligible for Long-Term Supplemental Payments as well as any other performance related awards the Company may provide.  *Id.* ¶¶ 6-7.  During  the past two years, those supplemental payments provided Plaintiff with over $30,000 per year in additional income.  *Id.*,  ¶¶ 5-6.

Two groups manage Freddie Mac's relevant computing platforms. They receive business requests for new computing capacity, applications or technologies and then develop and implement appropriate computing solutions.   One group is an operations team and the other is an engineering team.   In early 2010, the engineering team was assembled and Plaintiff was chosen as a charter member of that team based upon his

---

[2] A Statement of Undisputed Facts is attached hereto as Exhibit A ("Ex. ___").

aptitude and IT expertise developed over the years.   Upon the formation of the engineering team, Jun Hu became Plaintiff's immediate supervisor.   The computer engineers in the group perform office/non-manual work, select appropriate technologies to utilize in addressing computing needs, develop automation scripts and/or processes to manage computing platforms, test the solutions provided, and then provide documentation and the finished  solution(s) to the operations group to implement the technology.  Ex. B, Declaration of Plaintiff's Supervisor Jun Hu, ¶¶ 2-5.

Plaintiff is the subject matter expert for Freddie Mac's virtualization infrastructure, which uses a software product called "VMware."  VMware is intricate software with various component products that can be placed on a physical piece of hardware and will allow multiple operating systems to run on one machine, while at the same time leaving the individual operating systems segregated and running entirely on their own. *Id.*, ¶ 6. In essence, VMware allows computers to run multiple operating systems and applications, making the computer  infrastructure simpler and more efficient while allowing server consolidation to reduce the need for physical hardware.

Approximately 75% of Freddie Mac's computer operating system is virtualized, so Plaintiff's role as the subject matter expert for VMware is, and has been, critically important to the business operations of Freddie Mac – namely, its information technology infrastructure. *Id.* ¶¶ 5-6.

**A.**     **Plaintiff's Primary Job Duties Are Directly Related to the Business Operations of Freddie Mac**

As the subject matter expert for VMware, Plaintiff has played a key role in the development, documentation, modification, design and testing of Freddie Mac's virtualization infrastructure.  Plaintiff is the engineering lead for Freddie Mac's VMware

infrastructure, and does the design and engineering of VMware upgrades.  He researches new versions of the product, chooses new components in the infrastructure and upgrades the path for existing components, and adapts the upgrades to the unique requirements of Defendant's system.  *Id.* ¶ 7; Ex. D, Declaration of Manish Bhonde, ¶ 9.

The importance of Plaintiff's role with respect to Freddie Mac's IT infrastructure is further described by Plaintiff's supervisor:

> Dan is [the] undisputed lead in the virtualization infrastructure.  He demonstrated again in 2011 his capability to dive into any other new technology areas and provided both leadership and technical expertise to deliver tangible multiple benefits to the organization – HUD project is such an example.  His face-lift work on virtualization infrastructure is so impressive and will continue to serve Freddie for [a] long time.

Ex. H, Daniel Mock 2011 Performance Evaluation (page six).

Plaintiff also performs cost/benefit analyses and advises senior-level management with respect to new VMware software.  He is often the facilitator between management and vendors concerning new products and technology, and provides advice to management regarding potential purchases.  Plaintiff advises management regarding major computing platforms such as Windows, Virtualization and other major infrastructure services.  He also provides expert advice and resolution  regarding outages and disruptions to the operation of the VMware infrastructure.  *Id.* ¶ 9; Ex. D, ¶ 5.

Moreover, Plaintiff has served a key role in the set-up of Defendant's Out-of-Region Disaster Recovery Center, and has been the engineering team lead for that project. Ex. D, ¶5.  The importance of this project to the general business operations of Freddie Mac is critical, as it is a back up site where Freddie Mac could run its operations in case of a disaster at the Company's headquarters.  As explained by the Plaintiff:

> So if a plane to Dallas fell out of the sky and crashed in the [Northern Virginia] data center and took everything down, they could run – for this particular project, I think there were 19 key applications. Basically, the ones that made money for Freddie Mac could still operate. We could still send money to the Treasury. We could still buy mortgages, process mortgages. Whatever key business Freddie did, they could still operate. It did not include ancillary things, whatever else that Freddie does.

Ex. G, pp. 57-58.

This project was a huge undertaking by Freddie Mac, and has been on-going for two years. Plaintiff's work is a critical piece of that project.

The interchanges between Plaintiff and senior management are particularly instructive regarding Plaintiff's role in advising management on matters of significance. For example, in an e-mail exchange between Plaintiff and Subramaniam Kumar, Freddie Mac's former Vice-President of Engineering, Plaintiff provided his assessment to Mr. Kumar regarding the purchase of new products to support Freddie Mac's virtualization infrastructure:

> I was just reminded that there is a future hardware procurement as part of this effort. It is cheaper to upgrade the virtualized blade infrastructure and buy fewer VMware licenses then it is to buy licenses to cover existing hardware. We have already accounted for this in the Boulder purchases for Prod and DR, but we are waiting to see how much capacity could be reclaimed for non-Prod before we put a quote together. There is still almost $1M left for hardware out of the amount forecasted for this effort, but we will probably use only about half of it. I don't think we will be in a position to execute on this for another month.

Ex. B1, FM 98; see generally FM 97-102.

Senior management often received advice and consultation from Plaintiff regarding pricing, software licensing requirements, and the need, or lack thereof, for the purchase of new technology. In another example, Plaintiff was asked to, and did, provide his recommendations and cost assessments to Jim Dalton, an Engineering Director in charge of certain aspects of the Disaster Recovery Project. Ex. B1, FM 104-108.

Plaintiff also made presentations to high level groups at the Company, including Freddie Mac's Community of Practicing ("CoP") and Engineering Review Board concerning a proof of concept and/or justification for the purchase of new technology. Exs. B2-B4.  The CoP is the gatekeeper of new technologies coming into Freddie Mac, whose approval is required before a new technology can be purchased.  Ex. B, ¶7. Whether to purchase new technology is a major decision and investment for Freddie Mac, so it is necessary for a senior level person to make a presentation ("proof of concept") to the CoP and/or the Engineering Review Board to justify the purchase.  Such advice to management evidences that Plaintiff's primary job duties were directly related to the business operations of Freddie Mac.

**B.**     **Plaintiff's Primary Job Duties Include the Exercise of Discretion and Independent Judgment With Respect to Matters of Significance**

Plaintiff's exercise of discretion with respect to matters of significance is readily evident in his job functions.   As the undisputed subject matter expert for a major computer platform relied upon by the Defendant for its IT infrastructure, Plaintiff designs solutions to meet the business needs of the Company.  He uses his independent judgment and discretion in terms of what solution he proposes to a system malfunction; how to deal with an end-of-life technology; which new technology or upgrade to request for purchase; and how to test and configure a new technology to work in Defendant's computer operating systems. Ex. B, ¶¶ 10, 13; Ex. D  ¶¶ 8-9.

By way of example, during his deposition Plaintiff described a "critical" IT problem that affected all non-production databases.  Plaintiff alerted the Engineer and Operations Directors (Jun Hu and Tom Wiles, respectively) about the problem and informed them he was headed to the data center to work on the issue.  Plaintiff described

6

how he tried to rebuild the environment "from scratch" several times, contacted the vendor, and worked with the vendor to identify the problem and find a solution.  Ex. G, pp. 18-22.  Plaintiff performed these actions on his own and without direct supervision as to how to approach the problem and what actions to take.

Plaintiff himself described another example in his 2010 Performance Evaluation where he took on projects and used his own judgment and discretion to solve problems regarding Defendant's IT infrastructure even without the aid of vendor documentation or support:

> Upgraded entire Dart infrastructure and application to run on Windows 2003 for the frontend, SQL Server 2005 on the backend.  This application has not been supported by a vendor for over five years and was on obsolete hardware and Windows 2000 OS.  The existing PROD server was cloned to a virtual environment, and had in-place OS upgrade  to Windows 2003.  The application required many post-upgrade configuration changes to work including Crystal reports, IIS, and middleware drivers. *There was no vendor documentation to aid this upgrade.*

Exhibit I, Daniel Mock 2010 Performance Evaluation (page 4) (emphasis added).

As noted in the 2011 Job Analysis Form filled out by Plaintiff's supervisor, Plaintiff "[d]ecides how to best use technology to solve business issues/problems. Develops drawing[s] to illustrate how the technology will work, test[s] the technology and make[s] sure from an operations side it can be used.  Works mostly independently." Ex. B6.

In addition, the job description for Plaintiff's prior position - Engineering, Sr. - describes the overall job duties and states, "[s]olutions are innovative, thorough, and practical under limited direction … [i]ndeptently determines and develops approach to solutions." Ex. B7.  The job description for Engineering Tech Lead, the position Plaintiff has held from March of 2012 to the present, states, "[w]ork is accomplished without

appreciable direction.  Exerts considerable latitude in determining technical objectives of assignment."  *Id.* Plaintiff's use of discretion in evaluating whether to purchase new licenses, technology and upgrades bear out these job descriptions and show Plaintiff regularly exercising discretion and independent judgment with respect to his job duties.

Plaintiff's primary duties concerned matters of significance including: the out-of-region data center project, the HUD project,[3] the multi-family regional office project,[4] serving as the engineering lead for the VMware platform, and advising management with respect to the purchase of new technologies.  These matters facilitated Freddie Mac's ability to enhance and maintain its virtualization infrastructure and continue to affect the Company's technology storage capacity as well as its responsibilities to its regulators.  As such, Plaintiff's primary job duties include the exercise of discretion and independent judgment with respect to matters of significance.

### C.      Plaintiff's Primary Job Duties Are Those of a Computer Systems Engineer

As stated by Plaintiff's supervisor, Jun Hu, in his Declaration:

> Since October of 2010, in his job as an Engineering Sr. and Engineering Tech Lead, Dan performed computer engineering work including, but not limited to: enabling the U.S. Housing and Urban Development Agency ("HUD") to virtually connect to Freddie Mac's computer system; enabling the VMware Site Recovery Manager ("SRM") solution;  enabling the Multifamily regional office to connect to Freddie Mac's computer system;  enabling VMware vCloud Solution to manage virtualization; developing a computer program to manage VMware OS provision and HP Blade provision; and introducing  considerable   VMware

---

[3] For the HUD project, Plaintiff worked with Freddie Mac's Legal Division to create a system allowing Freddie Mac's regulator for housing issues, the U.S. Department of Housing and Urban Development, to have virtual access to Freddie Mac's computer system. Ex. B, ¶ 15.

[4] Freddie Mac's multifamily division purchases and securitizes loans for multifamily housing properties such as apartment buildings and nursing homes.  The multi-family regional office project involved allowing the regional office to have a virtual connection to Freddie Mac's computer network.  *Id.*, ¶ 14.

technology into Freddie Mac's system from version 4.0 to 5.0 to 5.1, VMware View, VCloud, and VMware SRM.

Ex. B, ¶ 14.

The solution Plaintiff created for the HUD project is attached as Ex. B5, and shows the design solution created by the Plaintiff for the project.

Further, in his 2010 Performance Evaluation, Plaintiff himself described his computer engineering duties when he stated that he has: "[d]eveloped, designed, automated, and implemented VMware BSC compliance … ; [d]eveloped and implemented automated VM provisioning for all supported versions of Windows and Linux; [u]pgraded entire VMware infrastructure to ESXi v4.1; [d]eveloped and deployed VMware build scripts to configure a new ESXi host; [d]eveloped, designed, scripted, and implemented zero-day HP Blade System provisioning."  Ex. I (page 4).

 In addition, Plaintiff is a Level 3 ("L3") IT engineer (with Level 1 being the help desk and Level 2 being the operations group) such that IT issues which cannot be resolved by the help desk or the operations team are escalated to the Plaintiff and other computer engineers.  Ex. C, Declaration of Tom Wiles, Director of Operations, ¶¶ 3-7, and 14.   Plaintiff regularly worked on solutions to complex IT problems which the operations team and/or other computer specialists within Freddie Mac's IT division could not resolve.   See, Ex. C1.

Plaintiff's job duties require highly specialized knowledge of VMware software and its component products, the testing of new technology, specialized knowledge of Freddie Mac's computer operating systems, and the development, design and configuration of solutions to implement software applications into Freddie Mac's IT environment.  Ex. D, ¶¶ 8-9.

**D.      Defendant Properly and in in Good Faith Classified Plaintiff's Job Duties as Exempt**

In 2011, Defendant engaged a third party consultant, Towers Watson, to perform an independent review of certain job classifications to determine whether certain positions should be reclassified as non-exempt and/or to confirm that there was a reasonable basis to conclude the positions at issue fell under one or more exemptions under the FLSA.  Plaintiff's position as Engineering, Sr. was part of the review.  Based upon information provided by Plaintiff's supervisor and the exemption criteria under the FLSA, Towers Watson concluded that Plaintiff's Engineering Sr. job duties, as well as the two other Engineering Sr. positions in Plaintiff's group, were exempt under the Computer Employee and Highly Compensated Employee Exemptions of the FLSA.  *See*, Ex. E2.[5]

Also in 2011, Plaintiff and his then-counsel complained that Plaintiff's job duties as an Engineering Senior ("Sr.") should be re-classified as non-exempt.  While Defendant could have just relied upon the Towers Watson conclusion as to Plaintiff's position of Engineering, Sr., Defendant nonetheless conducted an independent review of the matter to make sure Plaintiff's position was properly classified.  Gregory Watchman, Freddie Mac's Associate General Counsel for Employment Law & Employee Relations, spoke with persons in Freddie Mac's IT department, including Plaintiff's direct supervisor, Jun

---

[5] Perhaps because Towers Watson had already concluded that two other exemptions applied to Plaintiff, it took no position regarding whether the Administrative  Exemption also applied to him.  *See,* Ex. E2 (the Administrative Employee Exemption section is left blank).
Please note that the Towers Watson documents are labeled "Privileged and Confidential Attorney Client Work Product."  That designation was placed on the document by the third party vendor.   Freddie Mac does not believe that privilege applies, and has not asserted any legal privilege with respect to the document.

Hu, regarding Plaintiff's job duties.  He also obtained Plaintiff's compensation information.  Based on his careful review, Mr. Watchman concluded that Plaintiff's primary job duty involved computer design work, and therefore fell within the Computer Professional Exemption under Section 13(a)(17) of the FLSA.  Mr. Watchman also concluded that Plaintiff's job duties likely qualified for the Highly Compensated Employee Exemption.  Ex. E ¶¶ 4-5.

In June of 2013, more than a year after his promotion to Engineering Tech Lead, Plaintiff again raised the issue regarding whether his job was properly classified as exempt.  Plaintiff's base salary alone at that time was over $129,000, with bonuses included his compensation increased to $162,000.  Nevertheless, over a two to three month time-period, Mr. Watchman conducted yet another review of Plaintiff's job duties, including interviews with Plaintiff's first and second line supervisors, and, at the request of the Plaintiff, an interview with Tom Wiles.  He even had a detailed meeting with the Plaintiff to hear  Plaintiff's position as to why he thought his job duties were non-exempt. *Id.* ¶¶ 8-9.  Mr. Watchman also reviewed cases regarding the FLSA and potential exemptions, reviewed applicable Department of Labor regulations, and received cases from the Plaintiff which Plaintiff asserted supported his position.  After a thorough review, Mr. Watchman concluded that Plaintiff's job duties qualified for the Highly Compensated Employee Exemption of the FLSA, and likely qualified for the Computer Professional and Administrative Exemptions as well. *Id.* ¶ 11.  Mr. Watchman shared his legal analysis with the Plaintiff. *See*, Ex. E3.

Plaintiff did not accept Mr. Watchman's conclusions and filed this lawsuit in October of 2013.

## III.   ARGUMENT

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir.2006). A material fact is one that "might affect the outcome of the suit under the governing law."  *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir.2001), *quoting*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 248–49.  However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1986).

### A.    Plaintiff's Primary Job Duties Are Exempt Under the Highly Compensated  and Administrative Employee Exemptions of the FLSA

### 1.    Plaintiff is a Highly Compensated Employee

The FLSA exempts "highly compensated employees," defined as employees who have a "total annual compensation of at least $100,000" and an employee who "customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified in subparts B, C or D of this part." 29 C.F.R. § 541.601(a).  The regulations define the phrase "customarily and regularly" to mean "a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every

workweek; it does not include isolated or one-time tasks." *Id.,* § 541.701.  Further, this

exemption only applies:

> [T]o employees whose primary duty includes performing office or non-manual work.  Thus, for example, non-management production-line workers and non-management employees in maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers, laborers and other employees who perform work involving repetitive operations with their hands, physical skill and energy are not exempt under this section no matter how highly paid they might be.
>
> *Id.,* § 541.601(d).

The regulations define the term ''primary duty''' as "the principal, main, major or

most important duty that the employee performs."  *Id.,* § 541.700.  Further, "[f]actors to

consider when determining the primary duty of an employee include, but are not limited

to, the relative importance of the exempt duties as compared with other types of duties;

the amount of time spent performing exempt work; [and,] the employee's relative

freedom from direct supervision …" *Id.*  "Time alone, however, is not the sole test, and

nothing in this section requires that exempt employees spend more than 50 percent of

their time performing exempt work."  *Id.*

The regulations also provide that "[a] high level of compensation is a strong

indicator of an employee's exempt status, thus eliminating the need for a detailed analysis

of the employee's job duties.  For that reason, a highly compensated employee will

qualify for exemption if the employee customarily and regularly performs any *one or*

*more* of the exempt duties or responsibilities of an executive, administrative or

professional employee identified in subparts B, C or D of this part."   29 C.F.R. §

541.601(c) (emphasis added); *see also*, *Amendola v. Bristol-Myers Squibb Co.*, 558

F.Supp.2d 459, 478 (S.D.N.Y. 2008) (holding that because a high level of compensation

is a strong indicator of an employee's exempt status, "[t]his [highly compensated] exemption removes any requirement that an employer prove that an administrative exercised discretion in the performance of her duties").

The Fourth Circuit has held that, "[a]lthough salary alone is not dispositive under the FLSA, we note that the FLSA was meant to protect low paid rank and file employees and that [h]igher earning employees … are more likely to be bona fide managerial employees." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 338 (4th Cir. 2008) (internal quotations and citation omitted).

In this case, there is no dispute that Plaintiff's annual compensation at all times relevant in this matter, and particularly since 2009, has exceeded well over $100,000 per year. Indeed, Plaintiff's current base salary is $133,000, and he earned $162,000 in 2013 including bonuses per year. Ex. F, ¶¶ 6-7. Further, there is no genuine issue of material fact that Plaintiff's primary, main, and most important duty is that of a computer systems engineer and that his job consists of office, non-manual work. Ex. B, ¶ 5. Thus, in order to meet the highly compensated exemption, all that remains for Defendant to show is that Plaintiff customarily and regularly performs only *one* of the exempt duties of an administrative employee. *See, Zelenika v. Commonwealth Edison Co.*, 2012 WL 3005375, at *12 (N.D. Ill. 2012) ("[i]n order to prove [a highly compensated] Plaintiffs' FLSA-exempt status, Defendant need only establish that Plaintiffs' primary duty *either* was nonmanual work related to [Defendant's] management or general business operations *or* involved the exercise of discretion and independent judgment with respect to matters of significance.") (emphasis in original).

### 3.   Administrative Employee Exemption

An employee qualifies for the administrative exemption if: (1) the employee is compensated on a salary or fee basis at a rate not less than $455 per week; (2) the employee's primary duty is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200.  An employer bears the burden of proving that a particular employee's job falls within the administrative exemption.  *Darveau v. Detecon, Inc.*, *surpa,* 515 F.3d at 337 (4th Cir. 2008), *citing*, *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 7 (1st Cir.1997). Freddie Mac clearly meets that burden here.

### a.   Plaintiff's Primary Job Duties Directly Relate to the Management or General Business Operations of Freddie Mac.

The regulations define "directly related to the management or general business operations of the employer" to include, among other things, "work in functional areas . . . such as computer network, internet and database administration".  *Id.*, § 541.201.

Clearly, Plaintiff's work as a computer systems engineer involves Defendant's computer network, and Plaintiff's role as engineering lead for Freddie Mac's VMware infrastructure is directly related to the one of the business operations of the Defendant – namely, its information technology infrastructure.

Further, the regulations provide that administrative operations of a business include "white-collar employees engaged in 'servicing' a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control," and that "[a]n employee performing

15

such work is engaged in activities relating to the administrative operations of the business … " 29 C.F.R. § 541.205(b); *see, e.g., Bagwell v. Florida Broadband, LLC*, 385 F.Supp.2d 1316 (S.D. Fla. 2005) (employee whose primary duty was developing, improving, and making his employer's computer network system function reliably fell under the administrative exemption of the FLSA).

As detailed herein, it is undisputed that Plaintiff is a white-collar employee who advises senior management of the Defendant, he does planning on behalf of the Defendant with respect to software licenses, he evaluates new technology purchases and allocation of technology and resources, and he represents the Defendant with respect to interactions with vendors. *See*, Ex. B ¶¶ 7, 9-11; Exs. B1-B4; Ex. D ¶ 5.

The regulations also state that the phrase "directly related to management policies or general business operations" is "not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole." 29 C.F.R. § 541.205(c). Rather, the phrase includes those "who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business." *Id.*

Plaintiff's role as the subject matter expert for Defendant's VMware platform certainly affects the management policies and business operations of Freddie Mac's IT infrastructure. It is undisputed that Plaintiff designed the out-of-region VMware platform for Defendant's Denver Disaster Recovery data center and serves as the engineering lead for that project; he designed the solution that allowed HUD to access Freddie Mac's computer system (which was of substantial importance to Freddie Mac's legal and

16

business departments and was requested by one of Freddie Mac's regulators); he designed the multi-family regional office solution, and he continues to be the lead engineer for VMware configurations, designs and upgrades.  As an example, Plaintiff is the engineering lead for the upgrade of Defendant's VMware infrastructure from versions 5.0 to 5.1.  Ex. B  ¶ 7, 15; Ex. B2; Ex. C ¶ 5.

The record evidence clearly shows that Plaintiff's primary job duties directly relate to the management or general business operations of Freddie Mac's IT infrastructure.

**b.      Plaintiff's Primary Job Duties Include the Exercise of Discretion and Independent Judgment with Respect to Matters of Significance.**

The regulations explain that discretion and independent judgment, as they relate to the administrative exemption, involve:

> [T]he comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered .... [it] implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.

29 C.F.R. § 541.207.

In addition:

> The term does apply to the kinds of decisions normally made by persons who formulate or participate in the formulation of policy within their spheres of responsibility or who exercise authority within a wide range to commit their employer in substantial respects financially or otherwise. The regulations in subpart A of this part, however, *do not require the exercise of discretion and independent judgment at so high a level*. The regulations in subpart A of this part also contemplate the kind of discretion and  independent judgment exercised by an administrative assistant to an executive, who without specific instructions or prescribed procedures, arranges interviews and meetings, and handles callers and meetings himself where the executive's personal attention is not required.

*Id.*, § 541.207(d)(2) (emphasis added).

In this case, it is undisputed that Plaintiff is not a laborer, construction worker, factory worker, electrician, plumber or other employee which the regulations contemplate as being entitled to overtime. 29 C.F.R. § 541.601(d). Rather, Plaintiff routinely provides level 3 support to the company in his role as an infrastructure engineer. With substantial autonomy and discretion, he decides how to approach solutions to problems presented to him with respect to the Defendant's IT infrastructure; decides when to escalate an issue to the vendor for assistance or guidance; decides how to handle the projects to which he is assigned or for which he is asked to assist; and decides the few relative occasions when he alerts his supervisor to an issue. Ex. F, pp. 18-22; Ex. C ¶¶ 3-7, and 14; Ex. C1; Ex. D ¶¶ 8-9. These are precisely the type of functions that the regulations state fall within the exemption. *See, e.g.*, 29 C.F.R. § 541.207(e)(1) (stating, inter alia, that "discretion and independent judgment" may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment within the meaning of the regulations.");[6] *see also*, *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 535 (7th Cir. 1999) (fact that employee consulted with other prior to making decisions and that employee's decisions were subject to approval by higher level management did not preclude finding that employee exercised discretion and independent judgment as required for him to fall under the FLSA's administrative exemption).

---

[6] Thus, even if Plaintiff was not the final decision maker with respect to recommendations he made to management, that does not mean he did not use his independent discretion and judgment with respect to matters of significance.

All of the evidence in the record, including the job descriptions for the Engineering, Sr. and Engineering Tech Lead positions (Ex. B6), points to the fact that Plaintiff exercised discretion and independent judgment in the performance of his duties. Plaintiff's job functions were thus properly classified as exempt under both the highly compensated and administrative employee exemptions.

**B.      Plaintiff's Primary Job Duties Qualify for the Computer Employee Exemption**

Not only do Plaintiff's job duties fall under the highly compensated or administrative employee exemptions they also clearly fall under the computer employee exemption under the FLSA.

The regulations define the computer employee exemption as follows:

The section 13(a)(1) exemption applies to any computer employee compensated on a salary or fee basis at a rate of not less than $455 per week ... exclusive of board, lodging or other facilities, and the section 13(a)(17) exemption applies to any computer employee compensated on an hourly basis at a rate not less than $27.63 an hour. In addition, under either section 13(a)(1) or section 13(a)(17) of the Act, the exemptions apply only to computer employees whose primary duty consists of:

> (1) The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications;
>
> (2) The design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
>
> (3) The design, documentation, testing, creation or modification of computer programs related to machine operating systems; or
>
> (4) A combination of the aforementioned duties, the performance of which requires the same level of skills.

29 C.F.R. § 541.400(b).

In this case, Plaintiff's knowledge is not just limited to computers and software. Plaintiff's work includes "development, design, configuring and scripting." Ex. I (page 4). Plaintiff's design work also evidences theoretical and practical application of highly-specialized knowledge in the virtualization environment. Ex. B, ¶ 14; Ex. B5; Ex. C ¶ 10; Ex. D ¶ 5, 7. In addition, after he designs a solution, he tests it, and then turns it over to the operations team to run the system.

While Plaintiff did not write the code VMware software program (employees at VMware did that), Plaintiff does design solutions to integrate the software and enable the technology to work in Freddie Mac's unique operating systems. *Id.*, ¶ 8-9. Plaintiff's job duties thus include, "[t]he design, documentation, testing, creation or modification of computer programs related to machine operating systems." 29 C.F.R. § 541.400(b)(3).

Plaintiff's duties are very similar to those of the Plaintiff in *Bobadilla v. MDRC*, 2005 WL 2044938, at *8 (S.D.N.Y. 2005), in which the Court found that the plaintiff's job duties qualified for the computer employee exemption. In that case:

> Plaintiff "[m]ade actual, analytical decisions about how MDRC's computer network should function. [Plaintiff] assisted in the design and implementation of the MDRC network in California. In addition to installing and upgrading hardware and software, checking cables, and troubleshooting user connectivity problems, [Plaintiff] consistently made decisions regarding network modification and design, exempted responsibilities under Section 213(a)(17). For example, the plaintiff redesigned and supplemented an enterprise-wide strategy to ensure that information housed in critical MDRC servers was backed-up properly. The plaintiff took the primary role in locating new software … and based upon the plaintiff's research and recommendations, MDRC introduced a new backup system.

> *Id.*

The Court in *Bobadilla* also found that "upgrading servers" from Windows NT 4.0 to Windows 2000 meant that Plaintiff was involved in the "further exempted 'design,

documentation, testing, creation or modification of computer programs related to machine operating systems'" under Section 213(a)(17).  *Id.* at *9.

The plaintiff's job duties in *Bobadilla* are very similar to, if not identical, to the job duties of the Plaintiff as described by the Plaintiff himself in his performance evaluations, and as described in the Declarations by Plaintiff's supervisor and co-workers,  Jun Hu, Tom Wiles, and Manish Bhonde.

As such, Plaintiff's job duties are also properly classified as exempt under the computer employee exemption.

### C.      Plaintiff Cannot Show a Willful Violation of the FLSA

The statute of limitations under the FLSA is two years unless Plaintiff can prove that defendant acted willfully in violation of the Act.   29 U.S.C. Section 255(a).   As stated by the Fourth Circuit, when analyzing whether an employer may be found liable for a willful violation under the FLSA:

> [O]nly those employers who 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]' have willfully violated the statute … Negligent conduct is insufficient to show willfulness … Furthermore, the employee bears the burden of proof when alleging a violation is willful.

*Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 358 (4th Cir. 2011) (internal citations omitted), *quoting*, *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, (1988) (Unreasonable or negligent conduct is not enough to constitute "willful" conduct).

In the event that the Court was to find Defendant liable under the FLSA, any liability should be limited to two years.  The evidence herein demonstrates that Freddie Mac's  Associate General Counsel conducted two separate and extensive evaluations of Plaintiff's claims.   He met with Plaintiff's supervisors and engaged in discussions

regarding Plaintiff's job duties; met with the Plaintiff and engaged in discussions with the Plaintiff regarding his job duties; and, performed legal research, including a review of Department of Labor ("DOL") regulations to conclude that Plaintiff's job duties fell under one or more of the exemptions under the FLSA.  Ex. B, ¶ 12; Ex. C ¶ 7; Ex. E.  In addition, he did all of this after an independent third party consultant had already concluded that Plaintiff should be exempt.  *See*, Ex. E2.

These documents illustrate the good faith effort that Mr. Watchman undertook to understand Plaintiff's job duties, and the fact that he reviewed applicable DOL regulations and caselaw to determine the exempt status of Plaintiff's job.  *See* Exs. E1 and E3.  Under Section 255(a), these facts and documents establish that Defendant made a good faith review of Plaintiff's job duties.

Based upon these undisputed facts, Plaintiff cannot show that Defendant willfully violated the FLSA in classifying his Engineering, Sr. and Engineering Tech Lead job duties as exempt under the FLSA.  As such, Defendant requests summary judgment on this issue, and requests that in case any damages are awarded in this case, such damage award be limited to two years prior to the time Plaintiff filed this lawsuit.

**D.      Plaintiff Cannot Recover Any Damages for Alleged Unpaid Regular Time Under the FLSA**

In this matter, Plaintiff does not allege that he was paid less than the statutory minimum wage for the total number of hours he worked each week.  Rather, Plaintiff's claim is for alleged non-payment of all hours worked and overtime.  "The FLSA does not guarantee that employees are paid for every hour of work and does not allow for employees to recover more than the statutory minimum wage." *Avery v. Chariots for Hire*, 748 F. Supp.2d 492 (D. Md. 2010), *citing*, *Blankenship v. Thurston Motor Lines*,

415 F.2d 1193 (4th Cir. 1969) (finding "there was no statutory violation [under the FLSA] so long as each employee received during each week compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate.") (citation and internal quotations omitted).

It is undisputed that Plaintiff received compensation exceeding the statutory minimum hourly rate as Plaintiff's annual salary of well over $100,000 equates to an hourly amount far in excess of the statutory minimum wage. Defendant compensated Plaintiff at the minimum rate for every hour worked in a given week, and thus, there can be no violation of the FLSA minimum wage requirements. Accordingly, to the extent Plaintiff makes a claim for payment of alleged unpaid regular hours, Defendant requests that Plaintiff's claim be dismissed.

### III.    CONCLUSION

Based upon the foregoing and the exhibits attached hereto, Defendant respectfully requests that the Court grant summary judgment in its favor on all claims brought by the Plaintiff herein.

Respectfully submitted,

_____/s/_____
Malik K. Cutlar, Esq.
VSB #47580
mcutlar@pctlg.com
PCT LAW GROUP, PLLC
330 John Carlyle Street, Third Floor
Alexandria, Virginia 22314
(703) 881-9141
(703) 972-9153 (fax)


Barry M. Parsons
VSB #38843
Associate General Counsel
Freddie Mac
8200 Jones Branch Drive, MS 202
McLean, VA  22102
(703) 903-2390
(703) 903-3992 (fax)

*Counsel for Defendant Freddie Mac*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on the 6th day of June, 2014, I will cause the foregoing to be delivered by hand, and I further certify that on the 6th day of June, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

      Daniel Mock
      7731 Ogden Court
      Falls Church, Virginia 22043
      danielmock@cox.net


                                      _____/s/_____
                                        Malik K. Cutlar, Esq.
                                        VSB #47580
                                        mcutlar@pctlg.com
                                        PCT Law Group, PLLC
                                        330 John Carlyle Street, Third Floor
                                        Alexandria, Virginia 22314
                                        (703) 881-9141
                                        (703) 972-9153 (fax)
                                        *Counsel for Defendant Freddie Mac*